# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2071

NURADIN AHMED,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A77-654-519

ARGUED JANUARY 17, 2006—DECIDED NOVEMBER 2, 2006

Before BAUER, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Nuradin Ahmed ("Ahmed") is a 33-year-old native of Somalia who entered the United States under false pretenses. When the government placed him in removal proceedings, Ahmed requested political asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). An immigration judge ("IJ") denied his requests, and the Board of Immigration Appeals ("BIA") affirmed without an opinion. Ahmed has petitioned us to review his case.

In his petition for review, Ahmed challenges only the BIA's determination that he is not eligible for asylum. He

raises three arguments: that he proved past persecution, was held to an improper burden of proof on his future persecution claim, and proved a well-founded fear of future persecution. The last two involve the same inquiry. Ahmed is not arguing the IJ actually applied the wrong legal burden; rather, he is arguing that he proved his persecution claim and only an improperly harsh view of the burden of proof could have defeated it. Because the IJ's conclusion that Ahmed did not suffer past persecution and has no well-founded fear of future persecution is supported by substantial evidence, we deny Ahmed's petition for review.

## I. Background

Somalia is a land of clans and Ahmed is a member of the Midgan, a minority clan considered to be among the lowest social classes. BUREAU OF DEMOCRACY, HUMAN RIGHTS & LABOR, U.S. DEP'T OF STATE, SOMALIA: PROFILE OF ASYLUM CLAIMS AND COUNTRY CONDITIONS 17 (Mar. 2000). At least some of the animosity towards the Midgan stems from their status during the rule of Siad Barre (1969-1991). Despite the Midgan's traditionally marginalized status, Barre elevated a number of Midgan to important government posts. When his government was overthrown in 1991 and the country plunged into civil war, Barre's Midgan supporters were targeted for revenge. *Id.* Ahmed, however, was never specifically targeted or physically harmed—he was not identified as a supporter of Barre—and there is no evidence that any of his family members were physically harmed because they were Midgan.[1]

---

[1] In his application for asylum, Ahmed stated that he was beaten in Mado Weyne, a border town between Somalia and Ethiopia, because he is Midgan. At his hearing, however, Ahmed withdrew this assertion, testifying that he was discriminated against but never physically mistreated in Mado Weyne.

Still, Ahmed has seen his share of the civil unrest that has plagued Somalia since the fall of the Barre government. Once, in the early years of Somalia's civil war, Ahmed was riding on a bus carrying passengers of different clans when the bus was attacked by armed men. Though he could not be sure, Ahmed believed the attackers to be Hawiye clan members. Ahmed escaped unharmed, but he believes some of the passengers on the bus may have been killed. Ahmed also lost his job as a barber's assistant after the collapse of Barre's government. From 1992 to 1999, Ahmed lived what can be described as a nomadic life, traveling between regions of Somalia and Ethiopia picking up odd jobs.

Ahmed married a woman from the Akishu clan in 1997, but because Midgan are not supposed to marry outside their clan, his wife's extended family harassed him and tried to physically attack him. His wife's immediate family defended him, however, intervening whenever the extended family bothered him. Ahmed was never physically harmed by his wife's relatives. He says he had to leave several areas, including Mado Weyne (in the west) and Hargeysa (in the northwest), because of the way Midgan were perceived. Eventually Ahmed concluded that he could find no safe place to live in Somalia and made his way to the U.S., arriving here in 2000 and attempting entry by using false documents.

The United States initiated removal proceedings against Ahmed. He conceded removability, but sought political asylum, withholding of removal, and protection under the CAT. In March 2001, following a hearing, the IJ denied all forms of relief. The IJ concluded Ahmed is not eligible for political asylum because he is not a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). The IJ also denied Ahmed's request for withholding of removal and protection under the CAT, both of which carry higher burdens of proof. The BIA affirmed without opinion in December 2002.

Ahmed's lawyer then filed a motion to reconsider instead of the petition for review he should have filed. The motion to reconsider did not stop the clock for requesting review in this court. By the time the BIA denied the motion to reconsider, it was too late for Ahmed to seek review on the merits. Instead, he could challenge only the denial of the motion for reconsideration. This court denied his petition to review the denial of his motion for reconsideration. Ahmed then obtained a new lawyer who filed a motion to reopen with the BIA on the ground that Ahmed's first lawyer was ineffective. The BIA granted the motion and reissued its opinion. Ahmed seeks review once again, this time on the merits.

## II.  Discussion

Political asylum is a two-step process: first, the IJ must make the factual determination that the alien is a refugee as defined by 8 U.S.C. § 1101 (a)(42)(A), and then the IJ makes a discretionary determination whether to grant asylum to that refugee. 8 U.S.C. § 1158(b)(1); *see also, e.g.*, *Ali v. Ashcroft*, 394 F.3d 780, 784-85, 791 (9th Cir. 2005). A refugee is defined as one who is either unable or unwilling to return to his native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b)(1).

The persecution ground asserted here is Ahmed's membership in a particular social group, the Midgan. The government does not dispute that Ahmed is a Midgan and that his clan membership is membership in a social group for asylum purposes. *See In re H*, 21 I & N Dec. 337, 342-43 (BIA 1996) (recognizing that membership in a Somali clan is membership in a particular social group for asylum purposes). The IJ concluded Ahmed was not a refugee—he had not been persecuted in the past nor had a well-founded

fear of persecution if returned to Somalia—and so was not eligible for asylum. The BIA summarily affirmed the ruling, which makes the IJ's ruling the final agency decision. 8 C.F.R. § 1003.1(e)(4)(ii); *Feto v. Gonzales*, 433 F.3d 907, 911 (7th Cir. 2006).

Ahmed is now battling uphill. We review his asylum claim for substantial evidence, which is to say that if, after considering the whole record, we find "reasonable, substantial, and probative evidence" supporting the BIA's decision, we must affirm. *Feto*, 433 F.3d at 911 (quotations omitted). Only if the record compels the conclusion that Ahmed established his persecution claim will we overturn the agency's decision. 8 U.S.C. § 1252(b)(4)(B); *Feto*, 433 F.3d at 911. A simple difference of opinion will not suffice. *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004).

## A.  Past Persecution

One way for Ahmed to establish that he is a refugee and thus is eligible for asylum is to show that he is the victim of past persecution because of his membership in the Midgan clan. 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b)(1). Persecution is not so broad a concept as to encompass all that we regard as "unfair, unjust, or even unlawful or unconstitutional." *Sharif v. INS*, 87 F.3d 932, 935 (7th Cir. 1996) (quotations omitted). Persecution involves harms that go beyond mere harassment; it results from more than simply "unpleasant or even dangerous conditions in [the applicant's] home country." *Nakibuka v. Gonzales*, 421 F.3d 473, 476 (7th Cir. 2005). Persecution inflicts substantial harm or suffering, *Sharif*, 87 F.3d at 935, but it need not be life-threatening or freedom-threatening, *Koval v. Gonzales*, 418 F.3d 798, 805-06 (7th Cir. 2005).

Included within the contours of persecution are "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, torture," or conduct that threatens any of these

harms. *Capric*, 355 F.3d at 1084 (quotations omitted). Economic harm, too, may be persecution if it is deliberately imposed as a form of punishment and it results in sufficiently severe deprivations. *Id.*; *Borca v. INS*, 77 F.3d 210, 216 (7th Cir. 1996); *Sharif*, 87 F.3d at 935. General conditions of hardship that affect entire populations, however, are not persecution. *Capric*, 355 F.3d at 1084. Instead, to show past persecution Ahmed must show he was personally persecuted on account of his Midgan clan membership. 8 C.F.R. § 208.13(b)(1).

The record does not compel the conclusion that Ahmed suffered past persecution. Ahmed points to three incidents, but none rises to the level of persecution. First, Ahmed claims the bus attack threatened his life. This attack, however, did not occur because of Ahmed's membership in the Midgan clan. Indeed, Ahmed conceded that members of various clans were riding the bus at the time it was ambushed and that the attack was an incident of the general Somalian civil war. The bus attack was violent and threatened Ahmed's safety, but it had nothing *directly* to do with his being Midgan.

Second, Ahmed claims the threats of physical harm he received from his wife's extended family constitute persecution. But he was never actually harmed, and it is not apparent that any of the threats escalated beyond harassment. Moreover, Ahmed's immediate in-laws protected him from the extended family members who threatened him. In short, there is no indication that Ahmed's wife's relatives did anything but verbally threaten him. *See Ahmed v. Ashcroft*, 348 F.3d 611, 616 (7th Cir. 2003) ("[U]nfulfilled threats are generally insufficient to establish past persecution.").

Finally, Ahmed says he was persecuted by being subjected

to substantial economic deprivation.[2] Ahmed lost his job as a barber's assistant after the civil war broke out, and he spent the next eight years traveling between Somalia and Ethiopia picking up odd jobs. Ahmed says he moved from place to place because he feared for his safety as a result of his membership in the Midgan clan. But Ahmed returned to several of the places he claims to have first left in fear, which led the IJ to question whether he truly feared for his safety because of his clan membership. There is also no evidence Ahmed's economic difficulties were the result of deliberate punishment because of his status as a Midgan. Substantial evidence supports the IJ's conclusion that Ahmed did not establish past persecution.

## B.  Well-Founded Fear of Future Persecution

The other way Ahmed can establish refugee status is by showing that he has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b). A well-founded fear must be both subjectively genuine and objectively reasonable. *Capric*, 355 F.3d at 1093. There are two ways Ahmed can establish objectively reasonable fear of persecution. First, he may show that there is a reasonable possibility that he will suffer persecution if he is returned to Somalia. 8 C.F.R. § 208.13(b)(2)(i)(B). Such a showing is not necessarily demanding—Ahmed need not show that persecution is more likely than not to occur. *INS v. Cardoza-Fonseca*, 480 U.S.

---

[2]  The government contends Ahmed waived this argument because he did not press it below. We disagree. Ahmed presented evidence to the IJ about his economic situation. The fact that the IJ did not discuss economic hardship as a possible basis for persecution does not mean Ahmed waived the argument. Moreover, his notice of appeal, though it stated the issue broadly, is properly read to encompass a request that the BIA review his claims of persecution as a whole.

421, 431 (1987). But he must show that a reasonable person in his shoes would fear persecution. *Borca*, 77 F.3d at 214. In dicta, the Supreme Court's opinion in *Cardoza-Fonseca* suggested that under the right circumstances a one-in-ten chance of persecution could establish a well-founded fear of persecution. *Cardoza-Fonseca*, 480 U.S. at 431; *accord Perez-Alvarez v. INS*, 857 F.2d 23, 25 (1st Cir. 1988). This Court has not approached the question as one of percentages; rather, the inquiry is contextual and the showing is one of a "reasonable possibility." *Sayaxing v. INS*, 179 F.3d 515, 520 (7th Cir. 1999).

But Ahmed may avoid the "reasonable possibility" showing altogether if he opts to show there is a pattern or practice of persecuting members of the Midgan clan. 8 C.F.R. § 208.13(b)(2)(iii)(A). This is the second way of showing an objectively reasonable fear, and it is sometimes referred to as persecution per se. At oral argument, Ahmed's counsel emphatically reminded us that this is a "pattern or practice"—or persecution per se—case. Persecution must be "extreme" for an applicant to prevail in a pattern or practice case. *Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005). Ahmed must show a "systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group, and this effort must be perpetrated or tolerated by state actors." *Id.* (quotations omitted). The standard is high because once the court finds that a group was subject to a pattern or practice of persecution, every member of the group is eligible for asylum. A narrow interpretation of this ground for asylum stops an onslaught of asylum-seekers. *Id.*

Even assuming Ahmed has shown a subjectively genuine fear of persecution, he has not satisfied the objectively reasonable standard applicable in "pattern or practice" persecution cases. The Midgan are not treated well in Somalia, but their poor treatment is not a systematic, pervasive, or organized effort to kill, imprison, or severely

injure them—at least the evidence in this case does not compel such a conclusion. Ahmed points to the State Department's Somalia Profile that describes the vulnerability of the Midgan—among other minority clans—during the interclan chaos of the Somali civil war, but that report indicates that Midgans who worked in the Barre regime are particularly targeted, not that the Midgan as a group are systematically persecuted. SOMALIA: PROFILE OF ASYLUM CLAIMS AND COUNTRY CONDITIONS 17, *supra*, at 17; *see also Hassan v. Ashcroft*, 388 F.3d 661, 667 (8th Cir. 2004) (finding no error where IJ concluded "that there was no 'automatic correlation between clan affiliation and danger of persecution' toward Midgan clan members unless the individuals had visibly supported the old regime" (quoting BUREAU OF DEMOCRACY, HUMAN RIGHTS & LABOR, U.S. DEP'T OF STATE, SOMALIA: PROFILE OF ASYLUM CLAIMS AND COUNTRY CONDITIONS 10 (Dec. 1996)).

Ahmed contends *Ali v. Ashcroft*, 394 F.3d at 782-87, supports his claim that all Midgans face persecution. Quite the opposite—*Ali* reinforces the conclusion that visible supporters of the Barre regime are the real targets, not the Midgan as a people. *Ali v. Ashcroft* involved a Midgan woman whose family members were identified as Barre supporters because her husband worked in Barre's government. *Id.* at 782. The *Ali* court held that the petitioner proved *past persecution* by showing that she was raped, her family wrongfully detained, and her brother-in-law shot dead in front of her. *Id.* at 782-87. The court did not conclude, as Ahmed would like us to, that all Midgan qualify for refugee status because they face systematic persecution in Somalia. Past persecution provided one avenue for Ali to prove his claim, and establishing it would have entitled him to a presumption of a well-founded fear of persecution if returned to his native country. 8 C.F.R. § 208.13(b)(1). Unlike Ali, Ahmed was never identified as a Barre supporter, has made no showing of past persecution,

and is not entitled to the presumption of a well-founded fear of future persecution. The evidence Ahmed has presented does not compel the conclusion that the Midgan are systematically persecuted.

Moreover, if Ahmed can return to a part of his country where there is not a reasonable possibility of persecution, then he does not have a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(2)(ii). The IJ made just such a finding here. He held that Ahmed could return to Somaliland, an area in the northwest of Somalia controlled by the Isaaq clan, and live in relative safety there. The IJ relied on two reports—the State Department Country Report on Somalia and a United Kingdom Immigration and Nationality Directorate Report—both of which note the relative order established in the Somaliland region of Somalia. BUREAU OF DEMOCRACY, HUMAN RIGHTS & LABOR, U.S. DEP'T OF STATE, 1999 COUNTRY REPORTS ON HUMAN RIGHTS PRACTICES, SOMALIA § 2(d) (Feb. 25, 2000); IMMIGRATION & NATIONALITY DIRECTORATE, U.K. HOME OFFICE, ASYLUM IN THE UK: SOMALIA §§ 4.9-4.13, http://www.ind.homeoffice. gov.uk/default.asp?PageId=564 (last visited Mar. 12, 2001). A significant number of Somalians who fled the civil war have been returned there, basic government structures are in place, non-Isaaq clan members live in relative peace, and there is no general clan-based persecution in Somaliland. The record also suggests Ahmed's wife and Midgan children have lived in Somaliland without incident.

To be sure, the government reports on which the IJ relied also state that many parts of Somalia remain chaotic and dangerous, but Ahmed has not established that the violence is systematically directed against the Midgan. The evidence does not compel the conclusion that Ahmed has a well-founded fear of future persecution.

Ahmed does not press his claims for withholding of removal or protection under the CAT before this Court, so

he has waived them. *See, e.g.*, *Huang v. Gonzales*, 403 F.3d 945, 951 (7th Cir. 2005). In practical effect it makes no difference. The standard for asylum is the most lenient of the three, and Ahmed could not clear that hurdle. 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 208.16(c)(2); *Tabaku v. Gonzales*, 425 F.3d 417, 421 (7th Cir. 2005) (showing of clear probability of persecution required for withholding of removal); *Margos v. Gonzales*, 443 F.3d 593, 600 (7th Cir. 2006) (showing of likelihood of torture required for relief under the CAT).

Ahmed's petition for review of the order of the BIA is DENIED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*