In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-3340

YUN JIAN ZHANG,

*Petitioner*,

*v.*

ALBERTO R. GONZALES, UNITED STATES
ATTORNEY GENERAL,

*Respondent.*

———————

On Petition for Review of an Order
of the Board of Immigration Appeals
No. A96 133 769

———————

ARGUED FEBRUARY 14, 2007—DECIDED JULY 31, 2007

———————

Before MANION, WOOD, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Yun Jian Zhang, a citizen of
China, seeks review of the final decision of the Board of
Immigration Appeals that denied him asylum, withholding
of removal, and relief under the Convention Against
Torture. Because Zhang has failed to demonstrate persecu-
tion on account of his resistence to China's involuntary
population control policies, we deny review.

## I.

Petitioner Yun Jian Zhang ("Zhang") is a native and citizen of China. Zhang legally married his wife, Xiu Jiang Lui, on October 4, 1993, and when they registered their marriage, they also registered their daughter who was born before their marriage on January 1, 1993. They were fined 1,500 RMBs because their daughter was born before they were of age and legally married. Zhang and his wife paid the fine and returned to their home in Changle, Fujian Province. A little over a year later, Zhang's son was born on December 8, 1994.

On March 5, 1995, Zhang's wife attended a "female checkup" as required by China's family planning policies. At this appointment, an IUD was forcibly inserted into his wife. The government sent checkup notifications setting forth the fines and a penalty of sterilization; she has not returned for follow-up checkups out of fear of fines and forced sterilization.

When Zhang's son was of school age, Zhang attempted to register his son with the government so he could enroll him in school. The authorities denied Zhang's registration because he and his wife had failed to wait the requisite four years after having a daughter to obtain a birth permit to have a second child. The authorities also ordered Zhang to pay a 3,000 RMBs fine and threatened to destroy his house if he failed to pay the fine.

Two government officials along with four other individuals came to Zhang's home to collect payment for his fine on June 5, 1998, about one month after Zhang attempted to register his son. When Zhang informed them that he was unable to pay the fine, the officials and individuals who accompanied them smashed windows, doors, and

portions of his roof and also took his television. Ten days later, Zhang successfully pleaded with the governmental officials for his son's registration, but the fine remained unpaid. Zhang testified that he was able to register his son because home destruction was one of two options—fine or damage—presented to him when he went to register his son, though he also testified that he still owed the government money. After the destruction of their home, Zhang and his family went to live at his wife's parents' house in Lianjian, Fujian Province, about an hour's drive away from his house.

Both of Zhang's children are now lawfully registered with the Chinese government and attend public school near his in-laws' home, though he pays higher tuition because the children are considered out-of-district students. Before he came to the United States, Zhang and his family lived safely with his in-laws for four years, and he was gainfully employed as a construction worker during that time.

Zhang entered the United States on or about September 20, 2001, on a cargo container ship, without being admitted or paroled into this country. Upon entry into the United States, Zhang was taken to a Los Angeles, California hotel to call his family in China notifying them of his arrival and to pay the smuggler $60,000.[1] On September 19, 2002, Zhang filed an application for asylum, withholding of removal, and withholding of removal under the United Nations Convention Against Torture ("CAT"). The IJ conducted a hearing on January 26, 2004, at which Zhang

---

[1] Zhang testified that while he has paid some of the money, he still owes some to the smugglers. The amount of the balance is unclear from the record.

testified. In addition to the facts set forth above, Zhang stated that his wife and children continue to live in Lianjiang where his wife is registered and where she obtained identity documents from the local government officials without incident in May 2002. Zhang also introduced various exhibits including a photograph which he described as taken in 2002 and depicting his children standing in front of a cement sink in their destroyed home. The government introduced into evidence the U.S. State Department's Profile of Asylum Claims and Country Conditions for China which describes the fines imposed for births without authorization from the Chinese government, including that "[u]npaid fines have sometimes resulted in confiscation or destruction of private property." The government also submitted to the IJ the U.S. State Department's Country Report on Human Rights Practices for China which similarly describes fines imposed for family planning violations, including that "[u]npaid fines sometimes have resulted in confiscation or destruction of homes and personal property by local authorities."

The IJ found Zhang to be credible, but denied Zhang's petition for asylum, withholding of removal, and relief under CAT, although she granted his request for voluntary departure. Specifically, the IJ concluded that the fines Zhang received did not amount to persecution, particularly because he was able to register his son without harm. As to the destruction of Zhang's home, the IJ held that the photograph of his children in front of a cement sink in an unknown facility was insufficient to establish that the home was destroyed because it could have been taken anywhere. The IJ further explained that Zhang failed to establish that his home destruction was tied to his or his wife's violation of China's family planning laws and

concluded that "[a] failure to pay monies owed to the government and the repercussions thereof do not establish past persecution on account of political opinion." As for Zhang's fear of future persecution, the IJ held that fear of prosecution for illegal departure is not a legitimate basis for asylum and that his fear of sterilization is unfounded, particularly because he and his wife lived relatively unharmed between the time of his son's birth and Zhang's departure from China.

Zhang appealed to the Board of Immigration Appeals ("BIA"). The BIA dismissed Zhang's appeal concluding that he had "failed to establish a nexus between his circumstances and one of the protected grounds in the Act." Noting that the IJ did not find the photograph persuasive, the BIA adopted the IJ's decision and concluded that "the language defining 'refugee' in the Act [was not] so elastic that the 'other resistance' component of the statute includes the refusal to pay fines or a single IUD insertion." As for fear of future persecution with forced sterilization, the BIA stated that if the governmental authorities were going to "take action against" Zhang, they would have done so during the eight years after his son's birth and before he came to the United States.

Zhang now petitions this court to review the denial of his petition for asylum based in the destruction of his home. On apppeal Zhang does not challenge the fines imposed or the forcible insertion of an IUD into his wife.

## II.

We review the denial of asylum under the highly deferential substantial evidence standard which requires that the decision be "supported by reasonable, substantial, and

probative evidence on the record considered as a whole." *Sina v. Gonzales*, 476 F.3d 459, 461 (7th Cir. 2007) (citations omitted). "We will reverse only if the evidence presented is such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Gjerazi v. Gonzales*, 435 F.3d 800, 808 (7th Cir. 2006) (internal citations and quotation omitted). *See* 8 U.S.C. § 1252(b)(4)(B) (stating that "the administrative findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). Also, we may not reverse simply because we would have decided the case differently. *Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir. 2006) (citations omitted). Instead, we will reverse only if the evidence compels a contrary conclusion. *Youkhana v. Gonzales*, 460 F.3d 927, 931 (7th Cir. 2006) (citation omitted). As in this case, "[w]hen the BIA adopts the IJ's decision while supplementing the decision with its own reasoning, the IJ's decision, as supplemented by the BIA's decision, becomes the basis for review." *Gjerazi*, 435 F.3d at 807.

To succeed on a claim for asylum, a petitioner must establish that he is a refugee by "demonstrat[ing] that he is unable or unwilling to return to his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Bejko v. Gonzales*, 468 F.3d 482, 484 (7th Cir. 2006) (citation omitted). "If he has demonstrated past persecution, he is entitled to a rebuttable presumption of a well-founded fear of future persecution." *Id.* at 484-85 (citation omitted). "The Illegal Immigration Reform and Immigrant Responsibility Act amended the definition of "refugee" to cover certain applicants seeking relief from China's one-child policy who before the amendment could not establish persecu-

tion on one of the five enumerated grounds." *Zheng v. Gonzales*, 409 F.3d 804, 808 (7th Cir. 2005) (citing *Lin v. Ashcroft*, 385 F.3d 748, 752 (7th Cir. 2004)).

An applicant may establish past persecution based on political opinion if the applicant "(1) has been forced to abort a pregnancy, (2) has undergone involuntary sterilization, (3) has been persecuted for failing or refusing to undergo either such procedure, or (4) has been persecuted for 'other resistance to a coercive population control program.'" *Id.* (quoting 8 U.S.C. § 1101(a)(42)(B)). "Economic harm, too, may be persecution if it is deliberately imposed as a form of punishment and it results in sufficiently severe deprivations." *Ahmed v. Gonzales*, 467 F.3d 669, 673 (7th Cir. 2006) (citations omitted). In this case, Zhang asserts that he suffered past persecution based on political opinion, namely economic persecution for other resistance to a coercive population control program.[2] Zhang bears the burden of demonstrating that he suffered past persecution or a well-founded fear of future persecution on account of his political opinion. *See* 8 C.F.R. § 208.13(a).

Zhang argues that the IJ erred by finding him credible, but then denying his petition for asylum. In particular, Zhang contends that the IJ's determination that the home destruction for failure to pay the fine did not con-

---

[2] The government argues that Zhang waived his ability to argue "other persecution" on appeal by not specifically stating that he was proceeding on appeal on the "other persecution" prong of the statute, but we conclude that Zhang has sufficiently presented the issue for our review by attempting to rebut the IJ's conclusion that he has not established past persecution on account of political opinion.

stitute past persecution on account of political opinion is
in error because he established a tie between the destruc-
tion of his home and the family planning laws. He con-
cludes that he is entitled to asylum or, in the alternative,
that he is entitled to a new hearing.

Considering the record as a whole and Zhang's testi-
mony as credible, we conclude that "reasonable, substan-
tial, and probative evidence" exists to support the IJ's
denial of Zhang's petition for asylum, though we come
to this conclusion through a different path.[3] We are com-
pelled by the evidence to conclude that the evidence
establishes a tie between Zhang's home destruction and
China's coercive population control program. Both the
Country Report and the Profile of Asylum Claims for
China that the government submitted to the IJ describe
property destruction as part of the enforcement scheme
of China's population control policies. As to Zhang's
testimony, it is unclear whether, when he went to register
his son with the local governmental authorities, they
threatened home destruction if he failed to pay the fine (as
he stated on direct examination) or whether they presented
him with the option of paying the fine or the option of
having his house destroyed (as he stated on cross examina-

---

[3] Because "the issue [in this case] does not require finding
new facts, but rather is narrowly confined to whether the
undisputed record evidence compels the conclusion" that Zhang
has not established economic persecution for other resistance to
China's coercive population control policy, we do not usurp the
BIA's fact-finding role and thus do not need to remand this
case for the BIA's consideration. *Ghebremedhin v. Ashcroft*, 392
F.3d 241, 243 (7th Cir. 2004) (discussing *INS v. Ventura*, 537
U.S. 12 (2002)).

tion). Under either scenario, it is clear is that Zhang's home was damaged as part of the family planning enforcement scheme.[4] Furthermore, the government conceded at oral argument that the reason Zhang sustained damage to his home was because of his failure to abide by the population control laws in China.

Despite the existence of a nexus between the home damage and China's family planning policies, Zhang has not demonstrated that his situation is sufficiently severe to constitute economic persecution. *See Ahmed v. Gonzales*, 467 F.3d at 673 ("Economic harm, too, may be persecution if it is deliberately imposed as a form of punishment and it results in sufficiently severe deprivations."). Based on Zhang's testimony, the officials damaged the door, windows, and roof of his home, but the destruction about which Zhang testified was not irreparable, particularly for someone who made his livelihood doing construction. Also, Zhang was not deprived of access to employment, but was gainfully employed as a construction worker while he was in China. *Cf. Borca v. INS*, 77 F.3d 210, 216 (7th Cir. 1996) (holding that an alien who was a radiologist and was barred from any government employment, except farm labor established "imposition of substantial economic disadvantage on account of her political opinion."). In addition, Zhang and his family had shelter at his in-laws' home where they lived safely; the government

---

[4] Damage to the home apparently is in lieu of the fine. By inflicting damage equal to or greater than the amount of the fine, the punishment and deterrent are rendered. *See* U.S. Dep't of State Country Report on Human Rights Practices for China (1998); U.S. Dep't of State Profile of Asylum Claims and Country Conditions for China (2001).

did not interfere with him or his family after the government officials damaged his home.

Zhang cites several cases from our sister circuits in which government officials, when enforcing China's population control policies, inflicted home damage and other forms of economic punishment. Only in *Li v. Att'y General of United States*, 400 F.3d 157 (3d Cir. 2005), did the court address whether the Chinese government's actions amounted to persecution; the other cases did not discuss economic persecution. In *Li*, the Third Circuit concluded that a severe economic restriction existed amounting to persecution where

> [i]n the aggregate, a fine of more than a year and a half's salary; blacklisting from any government employment and from most other forms of legitimate employment; the loss of health benefits, school tuition, and food rations; and the confiscation of household furniture and appliances from a relatively poor family constitute deliberate imposition of severe economic disadvantage which could threaten his family's freedom if not their lives.

*Id.* at 169. Zhang's condition in China is not comparable to that of Li. Unlike Li, Zhang maintained employment. Zhang also registered his son without paying the fine, and his children attended public school. Additionally, he and his family lived in peace with his wife's family, despite the unpaid fine and his wife's failure to attend checkups. This is not a situation where Zhang and his family left Changle and went into hiding to avoid governmental authorities and thus were not bothered: Zhang's children are pupils at the public school, Zhang's wife obtained documents from governmental authorities as late as 2002, and Zhang's wife and children returned to Changle in

2002 when the photograph of his home was taken. Taking the evidence as a whole, we conclude that "reasonable, substantial, and probative evidence" supports the IJ's denial of Zhang's petition for asylum.

Finally, Zhang argues that he is entitled to asylum based on a fear of future persecution. However, Zhang bases this claim solely on the fact that he suffered past persecution through the destruction of his home. Because Zhang has failed to establish past persecution, he is not entitled to the rebuttable presumption of future persecution. *Bejko*, 468 F.3d at 484-85 (citation omitted). Therefore, absent any other evidence of past or future persecution, Zhang has not established a that he is entitled to asylum because of a fear of future persecution.

### III.

Because the evidence does not compel a conclusion that Zhang suffered past persecution based on a political opinion and because Zhang has not established the likelihood of future persecution, we DENY his petition for review.

A true Copy:

      Teste:

                _____

                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*