NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 22, 2009
Decided April 15, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

VIRGINIA M. KENDALL, *District Judge*[*]

Nos. 08-1055 and 08-2760

| | |
|---|---|
| AFSHEEN NAEEM, ABEER NAEEM and MUSKAAN NAEEM, | Petitions for Review of Orders of the Board of Immigration Appeals. |
| *Petitioners,* | |
| v. | Nos. A97-607-331, A97-607-332, and A-97-607-333 |
| ERIC H. HOLDER, JR., Attorney General of the United States, | |
| *Respondent.* | |

## O R D E R

---

[*] Honorable Virginia M. Kendall, United States District Judge for the Northern District of Illinois, is sitting by designation.

The petitioners, Afsheen Naeem and her children Abeer and Muskaan Naeem, are citizens of Pakistan who entered the United States in 2002 as non-immigrant visitors with authorization to remain in the country through June 13, 2003. After staying past that date, they filed an application for asylum with the Department of Homeland Security ("DHS"). DHS then issued notices for the Naeems to appear, charging that they were subject to removal under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States longer than permitted. The Naeems conceded removability but renewed their application for asylum; they also sought withholding of removal and protection under Article 3 of the Convention Against Torture ("CAT").

An Immigration Judge ("IJ") conducted a hearing in which the following evidence was presented. The Naeems are members of the Memon ethnic group in Pakistan. Mrs. Naeem is married to Mohammed Naeem,[1] who worked in a brokerage firm in Pakistan with Asif Haroon. Haroon's uncle and father-in-law is Abdul Aziz Memon, a member and leader of the Memon ethnic group. Memon once served as the president of a labor union and was formerly a member of the Parliament of Pakistan. For many years, Memon was also the head of the All Pakistan Memon Federation, an organization for which Mr. Naeem performed social work. Mr. Naeem supported and campaigned for Memon when he ran for Parliament in 1993 and considers Memon to be "pretty much like [a] family member" due to their shared ethnic background and socio-political affiliations.

In late 1999, Memon helped create the Alliance for the Restoration of Democracy, a group that opposed the Musharraf government. In 2000, the National Accountability Bureau ("NAB")[2] began investigating Memon for corruption, specifically for appropriating labor union funds for his personal use and funneling those monies to Haroon and Mr. Naeem's brokerage account. The NAB contacted Mr. Naeem and Haroon and demanded that they reveal the source of the money in their brokerage account. The NAB instructed them to say that the funds came from Memon, but they refused to do so. After Memon was arrested, he advised Haroon and Mr. Naeem to sell their business and flee the country. Shortly thereafter, both men left Pakistan and came to the United States.

In early 2002, Mrs. Naeem received a summons from the NAB instructing Mr. Naeem to appear for questioning. She also received several harassing phone calls from the

---

[1] Mr. Naeem's application for asylum is pending in a separate proceeding.

[2] The NAB is an agency of the Pakistani government that wields broad powers to carry out its charged task of rooting out corruption in the government and society.

NAB demanding to know where her husband was.  Officers from the Federal Investigation Agency ("FIA") visited Mrs. Naeem's home in late 2002 to inquire about Mr. Naeem's whereabouts.  Mrs. Naeem told the officers that her husband was in the United States.  Not believing her statements, the FIA officers destroyed some of her furniture and possessions, threatened her with arrest if Mr. Naeem did not appear, and pushed her against a wall.  Shaken and afraid, Mrs. Naeem took her family to stay for a while at her mother's house.  When FIA officers visited Mrs. Naeem at that location, they pulled her hair and slapped her.  An officer also slapped the face of her son and pushed him.  Mrs. Naeem was then escorted to NAB headquarters and interrogated for three hours.  Before releasing Mrs. Naeem, several government officials threatened to arrest her and her children if Mr. Naeem did not appear.  Mrs. Naeem and her children departed for the United States a few days later.  After she left Pakistan, neighbors observed NAB officers at the Naeems' house on several occasions.

Mr. Naeem said that he thinks Mrs. Naeem will be arrested or killed if she returns to Pakistan.  Mrs. Naeem stated that she believes she will be arrested because of her husband's political support of Memon and business partnership with Haroon.  She based that conclusion on the fact that Pakistani officials arrested Memon's wife, although Mrs. Memon was later released.  Mrs. Naeem acknowledged that Memon had already been charged, prosecuted, and served a sentence, and that she is not aware of any charges that currently are pending against him in Pakistan.  Nevertheless, she stated that she still thinks her husband is of interest to the Pakistani government.

At the conclusion of the hearing, the IJ, though having found Mrs. Naeem's testimony credible, denied the petitioners' application for relief and granted them a period of voluntary departure with an alternative order of removal to Pakistan if they did not depart within the allotted time. The Naeems appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  On December 12, 2007, the BIA issued an opinion that affirmed the IJ's decision and dismissed the appeal.  Specifically, the BIA agreed with the IJ that Mrs. Naeem did not present evidence that she had experienced harm rising to the level of persecution.  The BIA also concluded that the evidence did not show that she had a well-founded fear of future persecution in Pakistan because Memon had been tried and convicted and there were no charges pending against him.

The Naeems filed a petition for review of the BIA's decision with this court on January 8, 2008, which was docketed as case number 08-1055 ("first petition for review").  Two days later, they filed a motion with the BIA seeking reconsideration of its December 12, 2007 decision.  In that motion, the Naeems contended that the BIA had not considered

whether they had shown that the Pakistani government engaged in a "pattern or practice" of persecution against the relatives and close associates of Memon and, therefore, whether Mrs. Naeem had a well-founded fear of future persecution for that reason. By its order of June 17, 2008, the BIA granted the motion for reconsideration yet affirmed its previous decision. The BIA agreed that it had not addressed the pattern or practice claim in its December 12 order but attributed that fact to the petitioners' failure to raise the claim before the IJ or on appeal. Nevertheless, the BIA considered the issue and concluded that the Naeems had not established that the Pakistani government engaged in a pattern or practice of persecution against Memon's close associates.[3] The Naeems then filed a petition for review of the BIA's June 17 decision with this court on July 15, 2008, which was docketed as case number 08-2760 ("second petition for review"). We consolidated the two petitions for review.

Although neither side presses the issue, we have an independent duty to examine our jurisdiction over the two petitions. *Eke v. Mukasey*, 512 F.3d 372, 376 (7th Cir. 2008). Under 8 U.S.C. § 1252(a)(2)(B)(ii), we do not have jurisdiction to review the BIA's disposition of the motion to reconsider because such a decision is within its discretion per 8 C.F.R. § 1003.2(a). *Johnson v. Mukasey*, 546 F.3d 403, 404 (7th Cir. 2008). However, in the second petition for review, the petitioners are not asking us to review the BIA's discretionary grant of their motion to reconsider, but rather to review the BIA's decision upon reconsideration that addressed their pattern or practice claim and affirmed[4] the December 12 order.[5] Even though that decision "affirmed" the December 12 order, it substantially differed from that order because it added an analysis of the petitioners' pattern or practice claim; therefore, that decision effectively supplanted the previous order and became the final order of removal. *See Mu Ju Li v. Mukasey*, 515 F.3d 575, 578–79 (6th Cir. 2008) (holding that when a petition for review of a final order of removal is filed with the court of appeals and a motion to reconsider that order is filed with the BIA, if the BIA grants

___

[3] In its reconsideration decision, the BIA also repeated its analysis of the past and future persecution claims from the December 12 order.

[4] Under 8 C.F.R. § 1003.2(i), "[i]f the motion to reconsider is granted, the decision upon such reconsideration shall affirm, modify, or reverse the original decision made in the case."

[5] This situation is not governed by our decision in *Kucana v. Mukasey*, 533 F.3d 534, 537 (7th Cir. 2008), where we refused to probe the reasons underlying an unreviewable discretionary decision. Here, we are not examining the reasons that prompted the BIA to grant the motion to reconsider, but rather the decision that the BIA made after agreeing to reconsider the December 12 order.

the motion to reconsider and renders a new decision addressing the arguments raised in that motion, the original final order is vacated and the new decision takes its place); *see also Plasencia-Ayala v. Mukasey*, 516 F.3d 738, 745 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009); *Juggernauth v. U.S. Att'y Gen.*, 432 F.3d 1346, 1351 (11th Cir. 2005). Under § 1252(a)(1), we have jurisdiction over the second petition for review of that final order. However, that means that the December 12 order is no longer a final order under § 1252(a)(1), and we therefore lack jurisdiction over the first petition for review and must dismiss it. *Mu Ju Li*, 515 F.3d at 580; *cf. Gao v. Gonzales*, 464 F.3d 728, 730 (7th Cir. 2006) (stating that where a once-final order of removal was no longer final, "[a]ny judicial act . . . would be advisory").

Where, as here, the BIA has issued a free-standing opinion rather than supplementing or expressly adopting the IJ's decision, we review only the BIA's opinion.[6] *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). "Eligibility for asylum 'is a factual determination which we review under the substantial evidence test.'" *Kholyavskiy v. Mukasey*, 540 F.3d 555, 568 (7th Cir. 2008) (quoting *Sivaainkaran v. INS*, 972 F.2d 161, 163 (7th Cir. 1992)). Under that test, we will uphold the BIA's denial of relief if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "Reversal is appropriate only if the record *compels* a contrary result." *Haxhiu*, 519 F.3d at 690 (citing *id.* at 481 n.1).

Under 8 U.S.C. § 1158(b)(1), both the Secretary of Homeland Security and the Attorney General are vested with discretion to grant asylum to an alien who is a "refugee," i.e., an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant for asylum bears the burden of proving that he is a refugee, i.e., that he experienced past persecution or has a well-founded fear of future persecution, *Kholyavskiy*, 540 F.3d at 568, by a preponderance of the evidence, *Gomes v. Gonzales*, 473 F.3d 746, 753 (7th Cir. 2007).

The petitioners argue that the BIA erred in concluding that Mrs. Naeem did not demonstrate that she previously experienced harm rising to the level of persecution.

---

[6] In their briefs to this court (and to the BIA as well), the petitioners essentially challenge only the denial of their asylum application; they do not develop arguments concerning the denial of withholding of removal and protection under the CAT. Therefore, they have waived judicial review of those claims. *Haxhiu v. Mukasey*, 519 F.3d 685, 692 (7th Cir. 2008).

Although persecution is not defined by the asylum statutes or regulations, we often have said that it is more than mere harassment or unpleasant and dangerous conditions in the applicant's home country. *See, e.g., Ahmed v. Gonzales*, 467 F.3d 669, 673 (7th Cir. 2006). Rather, persecution involves the infliction of substantial harm or suffering, though not necessarily of the life- or liberty-threatening sort. *Id.*

That Mrs. Naeem had her home invaded and some furniture destroyed, was interrogated for three hours and threatened with arrest if her husband did not appear, and was pushed, slapped, and had her hair pulled is certainly irritating and bothersome. However, the physical mistreatment cannot be characterized as persecution because it was not sufficiently severe or prolonged in light of our case law. *See Zhu v. Gonzales*, 465 F.3d 316, 319 (7th Cir. 2006) (collecting cases). The same is true of the three-hour interrogation, which was relatively brief and did not result in any physical harm. *See BinRashed v. Gonzales*, 502 F.3d 666, 671 (7th Cir. 2007) (collecting cases). When viewed alongside the detention and physical mistreatment, the threats of arrest and the furniture destruction perhaps present a closer call; however, even when considered as a whole, those events are more akin to harassment than persecution. Accordingly, we cannot say that the record compels the conclusion that Mrs. Naeem suffered past persecution.

The petitioners also contend that the BIA erred in determining that Mrs. Naeem had not shown that she has a well-founded fear of future persecution in Pakistan. In order to establish a well-founded fear of persecution, an applicant must demonstrate that his fear is both subjectively genuine and objectively reasonable in light of the credible evidence. *Garcia v. Gonzales*, 500 F.3d 615, 618 (7th Cir. 2007). The subjective component depends largely on the applicant's testimony and credibility. *Bolante v. Mukasey*, 539 F.3d 790, 794 (7th Cir. 2008). The objective component may be satisfied in one of two ways: the applicant must "show that he will be singled out for persecution or that a group to which the applicant belongs is subject to a pattern or practice of persecution." *Musollari v. Mukasey*, 545 F.3d 505, 508 (7th Cir. 2008) (citing 8 C.F.R. § 208.13(b)(2)).

To succeed under the "singled out" method, the applicant must "show that there is a reasonable possibility that he will suffer persecution if he is returned" to his country of nationality. *Ahmed*, 467 F.3d at 674. In rejecting Mrs. Naeem's argument that she would be singled out for persecution upon her return to Pakistan, the BIA relied on her testimony that Memon had been convicted and served a sentence and that she was not aware of any pending charges against him. The BIA also pointed out that there was no evidence that the Pakistani government had any other reason to detain either her or her husband. The BIA concluded that Mrs. Naeems's fear of future persecution was not well-founded because

there was no evidence that the Pakistani government still has an interest in her husband that would place her in danger of persecution.

While they do not contest the BIA's reasoning process, the petitioners argue that the BIA misconstrued the "clear sense" of Mrs. Naeem's testimony. On direct examination, Mrs. Naeem testified that Memon's wife (not Memon) had been released after being arrested. The petitioners claim that the government's attorney asked Mrs. Naeem a question on cross-examination that mischaracterized her earlier testimony as being that *Memon* had been convicted and served a sentence. According to the petitioners, that question (or the translator's interpretation of the question) confused Mrs. Naeem and caused her to agree with the government's misunderstanding. On re-direct, her own attorney supposedly repeated the error and caused her to confirm that Memon had been arrested and served time. The petitioners assert that Mrs. Naeem's correct original statement was supported by her husband's testimony that Mrs. Memon had been convicted and sentenced.

The government responds that because the petitioners failed to raise this argument in their appeal to the BIA , they have failed to exhaust their administrative remedies as required by 8 U.S.C. § 1252(d)(1). We agree. "Generally, an alien is required to raise and exhaust his remedies before the BIA as to each claim or ground for relief to preserve his right to judicial review of that claim." *Chakir v. Gonzales*, 466 F.3d 563, 567 (7th Cir. 2006). Not only did the petitioners fail to raise the issue to the BIA, they actually stated in the brief they filed with the BIA that Memon had been convicted and served time. Therefore, we are unable to consider the petitioners' argument because they did not exhaust the administrative remedies available to them of right. 8 U.S.C. § 1252(d)(1). Accordingly, we find that substantial evidence supports the BIA's conclusion that Mrs. Naeem did not have a well-founded fear of being singled out for future persecution because the Pakistani government's desire to have her husband testify dissipated with Memon's conviction and imprisonment.

We turn, then, to the pattern or practice claim. In order to prevail under a pattern or practice theory, the applicant must show extreme persecution—i.e., a "systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group" by governmental actors. *Ahmed*, 467 F.3d at 675 (quoting *Mitreva v. Gonzales*, 417 F.3d 761, 765 (7th Cir. 2005)). This standard is difficult to meet because all members of a group are eligible for asylum once the group is deemed to be subject to a pattern or practice of persecution. *Id.* In addressing the petitioners' pattern or practice claim, the BIA concluded that the evidence showed that the Pakistani government had only targeted

Memon's immediate family members and that the petitioners were not members of that group. The BIA also noted that the evidence did not indicate a systematic effort to persecute members of a more extended group.

The petitioners argue that the Pakistani government's systematic effort to target persons closely associated with Memon is demonstrated by the following evidence: 1) Haroon's affidavit statement that the Naeems would be arrested due to their support for Memon; 2) the INS decision granting Haroon asylum; 3) Mrs. Memon's bail application that recounts the mistreatment of Memon and his family; and 4) testimony by Mr. Naeem about his arrest in 1996 for supporting Memon. According to the petitioners, that evidence is contrary to the BIA's finding that the record only indicates the Pakistani government targeted Memon and his immediate family and not his close associates.

We do not think that the record compels the conclusion that the petitioners are eligible for asylum based on their pattern or practice claim. As the BIA correctly observed, the record only shows that Memon's immediate family members (including his wife and Haroon, his nephew/son-in-law) were targeted by the Pakistani government, and the petitioners clearly are not members of that group. Moreover, there is no evidence in the record that any of Memon's close associates were subjected to systematic, extreme persecution due to their affiliation with Memon. Therefore, we conclude that the BIA's decision is supported by substantial evidence.

For the foregoing reasons, we DISMISS the petition for review in case number 08-1055 for want of jurisdiction and DENY the petition for review in case number 08-2760.