[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15801
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 21, 2009
THOMAS K. KAHN
CLERK

Agency Nos. A097-194-333, A098-548-869

SETIADI SUTANTO,
VIRYANTI WIJAJA,
a.k.a. Viryanti Wijaya,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 21, 2009)

Before BIRCH, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

This is a consolidated case in which Setiadi Sutanto and Viryanti Wijaya,

natives and citizens of Indonesia, petition for review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order denying them asylum, withholding of removal, and Convention Against Torture ("CAT") relief.

In their petition, Sutanto and Wijaya argue that the BIA ignored the record evidence when it found that Sutanto failed to establish past persecution and a well-founded fear of future persecution because Sutanto credibly testified about threats that were made against him and his family, as well as general anti-Christian sentiment in Indonesia. In addition, the Petitioners argue that Wijaya also established a well-founded fear of future persecution because she testified to being threatened in the past and about her mother's church being bombed. The Petitioners emphasize that their testimony was corroborated by both the background country information and witness testimony about how badly Chinese Christians have been treated in Indonesia. In support of their arguments, the Petitioners cite our decision in Tan v. U.S. Att'y. Gen., 446 F.3d 1369 (11th Cir. 2006).

Because the BIA in this case did not expressly adopt the IJ's decision, we will review only the BIA's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Factual determinations are reviewed under the substantial evidence test, and we will affirm the BIA's decision if it is supported by

2

reasonable, substantial, and probative evidence on the record as a whole. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Therefore, we will reverse a finding of fact only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). "Where the [BIA] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented." Tan, 446 F.3d at 1374.

As an initial matter, we note that Petitioners' counseled brief does not set forth an explicit argument concerning asylum or CAT relief. Therefore, they have abandoned these issues on appeal, and the only issues left to address are whether they are eligible for withholding of removal based upon individualized persecution or a pattern or practice theory of persecution. See Sepulveda v. U.S. Att'y. Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

"An alien seeking withholding of removal under the [Immigration and Naturalization Act] must show that [his or her] life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion." Mendoza v. U.S. Att'y. Gen., 327 F.3d 1283, 1287 (11th Cir. 2003)(citing 8 U.S.C. § 1231(b)(3)(A)). The alien "bears the burden of demonstrating that [he or she] more-likely-than-not would be persecuted or

3

tortured upon [his or her] return to the country in question." Mendoza, 327 F.3d at 1287. This burden of proof can be satisfied through credible testimony by the alien. Id. "If the alien establishes past persecution in [his or her] country based on a protected ground," a rebuttable presumption is created that the alien's "life or freedom would be threatened upon return to [his or her] country." Id. "An alien who has not shown past persecution, though, may still be entitled to withholding of removal if [he or she] can demonstrate a future threat to [his or her] life or freedom on a protected ground in [his or her] country." Id.

We have defined persecution as an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation. Sepulveda, 401 F.3d at 1231. In this context, we have held that threats alone do not give rise to a persecution-based claim for relief. Silva v. U.S. Att'y. Gen., 448 F.3d 1229, 1237-39 (11th Cir. 2006). In addition, we have found that an applicant's fear of future persecution is significantly undermined if, at the time of his asylum application, his family members still were alive and unharmed in his country of origin. Ruiz v. U.S. Att'y. Gen., 440 F.3d 1247, 1259 (11th Cir. 2006).

The BIA's finding about the lack of individualized persecution here is supported by substantial evidence. The petitioners have failed to show any mistreatment that rose to the level of past persecution, and they have not provided sufficient evidence that they would be singled out for persecution if they were to be

4

returned to Indonesia.

This Court has not directly addressed the pattern or practice theory of persecution. See Mohammed v. U.S. Att'y. Gen, 547 F.3d 1340, 1356-57 (11th Cir. 2008) (Wilson, J., dissenting) (relying on caselaw from other circuits to analyze a pattern or practice theory of persecution). However, the Ninth Circuit has held that, in "extreme situations," members of an entire group are systematically persecuted and can qualify for immigration relief solely because they are members of the persecuted group. Kotasz v. INS, 31 F.3d 847, 852 (9th Cir. 1994). The court provided an example of Jews in Nazi Germany and stated that: "it would not have been necessary for each individual Jew to await a personal visit to his door by Nazi storm troopers in order to show a well-founded fear of persecution. Similarly, it would be unnecessary for members of other systematically persecuted groups to show that they have been selected on an individual basis as subjects of persecution." Id.

Even if the pattern or practice theory of persecution were viable in this Circuit, Petitioners have failed to prove same. The Seventh Circuit has emphasized that for an applicant to prevail on this theory, the persecution must be "extreme," and the applicant must show "systematic, pervasive, or organized effort to kill, imprison, or severely injure members of the protected group." Ahmed v. Gonzales, 467 F.3d 669, 675 (7th Cir. 2006). The court explained that this "standard is high

5

because once the court finds that a group was subject to a pattern or practice of persecution, every member of the group is eligible for [immigration relief]." Id.

With regard to the circumstances in Indonesia, many circuits have found that there is no pattern or practice of persecution against Chinese Christians in Indonesia. See Kho v. Keisler, 505 F.3d 50, 54-55 (1st Cir. 2007); Kaharudin v. Gonzales, 500 F.3d 619, 624 n.4 (7th Cir. 2007); Lolong v. Gonzales, 484 F.3d 1173, 1180-81 (9th Cir. 2007) (en banc); Tolego v. Gonzales, 452 F.3d 763, 766-67 (8th Cir. 2006); Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005). The BIA has likewise found a lack of a pattern or practice of persecution in Indonesia. Matter of A-M-, 23 I. & N. Dec. 737, 741 (BIA 2005). The only decision that supports Sutanto and Wijaya's position is the Fifth Circuit's decision in Eduard v. Ashcroft, 379 F.3d 182, 192 (5th Cir. 2004), in which the court relied on events that occurred in 2000 to hold that there was a pattern or practice of persecution against Christians in Indonesia. Eduard, 379 F.3d at 192 and n.10.

According to the 2006 Country Report, 18 Christians were killed during the year covered by the report. The 2006 Religious Freedom report presents similar findings by stating that 12 Christians were killed and 52 were injured during the year covered by the report. Because Indonesia has a population of about 241 million people, 9% of whom are Christian, it does not appear that even the sporadic deaths of fewer than 20 Christians are sufficient to establish a pattern or practice of

6

persecution in that country as a whole. This is especially true given that both reports state that the Indonesian government has engaged in efforts to reduce the mistreatment of minorities in the country and to punish those responsible for that mistreatment. Because these Country Reports were submitted in 2006, this case is distinguishable from the Eduard decision, which relied on events that occurred in 2000. See Eduard, 379 F.3d at 192 n.10. Thus, the evidence in this case does not compel a reversal of the BIA's pattern or practice finding.

Accordingly, we deny their petition.

**PETITION DENIED.**