In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-3455

WASHINGTON NZEVE and LORRAINE MAPEPA,

*Petitioners,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
Nos. A098-162-084 and A098-162-085

ARGUED APRIL 6, 2009—DECIDED SEPTEMBER 17, 2009

Before BAUER, SYKES and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* Washington Nzeve, a citizen of
Zimbabwe, petitioned the United States for asylum,
withholding of removal, and protection under the Con-
vention Against Torture. Lorraine Mapepa, Nzeve's
wife, would qualify as a derivative beneficiary of any
relief granted to Nzeve. Nzeve claims that he suffered

past persecution and has a well-founded fear of future persecution on account of his involvement with the Movement for Democratic Change ("MDC"), a political party opposed to President Mugabe's Zimbabwe African National Union–Patriotic Front ("ZANU–PF"). The Immigration Judge ("IJ") denied each request. The Board of Immigration Appeals ("BIA") affirmed the decisions, as do we.

## I. BACKGROUND

Nzeve joined the MDC in 1999. He had a membership card, attended meetings, and made contributions to the party, although he did not hold a leadership position. Later in 1999, Nzeve traveled to the United States for two weeks to attend a church conference on AIDS and HIV awareness. When he returned home, members of the MDC informed Nzeve that "members of the ruling party" were looking for him and threatening his life because they suspected that he went to the United States to raise money for the MDC. Nzeve took the reported threat seriously and moved to his uncle's house in a different town for a few weeks. However, nothing came of the threat and he was never confronted or directly threatened by the ZANU–PF. Nzeve continued his involvement with the MDC for several years without incident.

In early September 2003, Nzeve heard that the army had been conducting nighttime raids and assaulting MDC members in order to intimidate them before an upcoming parliamentary election. In response to this

information, Nzeve destroyed his MDC membership card and other evidence linking him to the MDC. On September 10, 2003, ten men in army uniforms arrived at Nzeve's house at around 2:00 a.m., asking to speak with him. Nzeve is not sure whether the men were government soldiers or ZANU–PF youth whom the government supplied with equipment.

When he identified himself, the men took Nzeve inside his house, asked him questions pertaining to his affiliation with the MDC, including his 1999 trip to the United States, accused him of "funding the opposition," and searched his house for materials linking him to the MDC. Nzeve denied his affiliation with the MDC and the men found nothing inside the house linking him to the party. The men beat Nzeve with batons, kicked him, struck him with the butt of a gun, and threatened to "silence [him] forever" if he did not "change whatever [he] was doing with the [MDC]." Nzeve incurred blisters on his buttocks and the bottom of his feet, and bruises on his back.

To be treated at the hospital, Nzeve needed a police report documenting the incident. He called the police, but they told him that they could not attend to such petty matters. Mapepa drove Nzeve to his uncle's house, and remained there for a few days to care for Nzeve's wounds. Nzeve stayed with his uncle for approximately six months, during which time Nzeve did not continue his activities with the MDC because he "wanted to lay low and not to raise any [suspicions]." However, Nzeve continued to work as a banker at the same bank he had

worked at before the assault. He was not confronted again by the ZANU–PF or any other group, and his family, some of whom continued to live in Nzeve's house, has not been harmed.

In March 2004, Nzeve left his uncle's house and came to the United States on a visitor's visa. Mapepa followed Nzeve to the United States shortly thereafter, also on a visitor's visa. Both overstayed their visas. Two days after his visa expired, Nzeve filed a petition for asylum, withholding of removal, and protection under the Convention Against Torture. The IJ denied the requested relief and ordered Nzeve and Mapepa removed from the United States. The IJ found that Nzeve's experiences did not rise to the level of past persecution and that he did not have an objectively reasonable fear of future persecution. In a brief opinion, the BIA affirmed the decision "[f]or the reasons stated by the Immigration Judge," but granted Nzeve and Mapepa's request for voluntary departure.

## II.  DISCUSSION

On appeal, Nzeve argues that the IJ and BIA were wrong to deny his petition for asylum and withholding of removal. He claims that the totality of his experiences in Zimbabwe constitutes past persecution and that he sufficiently demonstrated a well-founded fear of future persecution. Specifically, Nzeve claims that the IJ failed to appropriately consider certain documents in the record reporting on abuse MDC members suffer in Zimbabwe and the increased risk to returned asylum

seekers, and that the IJ applied the wrong standard of proof to his asylum claim. Nzeve no longer pursues his claim under the Convention Against Torture.

> Where, as here, the BIA adopts the IJ's decision while supplementing the decision with its own reasoning, the IJ's decision, as supplemented by the BIA's decision, becomes the basis for review. We review the denials of asylum and withholding of removal under the substantial evidence standard. Under this deferential standard, we uphold the decision so long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. We will overturn the decision to deny relief only if the record compels a contrary result.

*Bolante v. Mukasey*, 539 F.3d 790, 793 (7th Cir. 2008) (quotation marks and citations omitted).

### A. Procedural Matters

Before starting in earnest, we pause to address one procedural issue. The IJ conducted the proceedings in this case via tele-video conference. The IJ sat in Chicago and all evidence and motions were filed in Chicago, but the parties were in Kansas City, Missouri. Nzeve correctly points out that the IJ was wrong in deciding that the case fell under the jurisdiction of the Eighth Circuit and in applying some Eighth Circuit law. *See* 8 U.S.C. § 1252(b)(2) (petition for review to be filed with court of appeals for the "circuit in which the immigration judge completed the proceedings"); *see also*

*Ramos v. Ashcroft*, 371 F.3d 948, 949 (7th Cir. 2004) (location of the court, not the litigants, determines where proceeding is completed). However, Nzeve does not claim that this error caused him prejudice.

### B. Asylum

To be eligible for asylum, Nzeve must prove that he is a refugee. 8 U.S.C. § 1158(b)(1)(A). A refugee is an alien "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(b) (An "applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution."). Nzeve carries the burden of establishing eligibility for asylum. 8 C.F.R. § 208.13(a); *Jamal-Daoud v. Gonzales*, 403 F.3d 918, 922 (7th Cir. 2005).

Nzeve first claims that the IJ erred in finding that Nzeve has not suffered past persecution. If an alien can prove that he suffered past persecution, he is entitled to a rebuttable presumption that he also has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). In deciding whether a petitioner's experiences rise to the level of persecution, an IJ must consider the record "as a whole" rather than "addressing the severity of each evident in isolation, without considering its cumulative

significance." *Tchemkou v. Gonzales*, 495 F.3d 785, 790-91 (7th Cir. 2007) (quotation marks and citations omitted).

Nzeve points to two incidents that he argues prove that he suffered past persecution when considered cumulatively—the threat in 1999 and the assault in 2003. "Threats can constitute past persecution only in the most extreme circumstances, such as where they are of a most immediate or menacing nature or if the perpetrators attempt to follow through on the threat." *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006). Nzeve was not threatened or confronted directly by the government or the ZANU–PF in 1999; rather, members of the MDC informed him of the threat on his life. Nothing came of the threat—no one came looking for him at his uncle's house, where Nzeve stayed for a few weeks, or at his house, where his family continued to live. And Nzeve was able to continue supporting the MDC for several years without incident. So while we examine the totality of Nzeve's experiences, the threat simply does not contribute much to his case.

The heart of Nzeve's claim for past persecution is the assault he suffered in 2003. "Past persecution may be shown through even a single episode of detention or physical abuse, if it is severe enough." *Nakibuka v. Gonzales*, 421 F.3d 473, 476 (7th Cir. 2005). "While it is distasteful to have to quantify suffering for the purposes of determining asylum eligibility, that is our task." *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003). Nzeve's home was searched and he was questioned, threatened, and beaten. Nzeve testified, "They were

hitting me with batons and they were kicking me as well and one of them actually hit me with the back of his gun." Nzeve incurred blisters on his buttocks and the bottom of his feet, and bruises on his back. The men threatened to come back and silence Nzeve forever if he did not end his affiliation with the MDC, but neither Nzeve nor his family have been approached since then.

Nzeve cites two cases to support his claim that his treatment was sufficiently severe to qualify as past persecution, but neither is analogous to the present case. In *Asani v. I.N.S.*, 154 F.3d 719, 723-25 (7th Cir. 1998), we stated that it is likely that the harm the petitioner suffered constituted persecution where he lost two teeth from being beaten by police and separately suffered "a two-week detainment in a cell with only enough room to stand, handcuffed to a radiator, and deprived of sufficient food and water." In *Vaduva v. I.N.S.*, 131 F.3d 689, 690 (7th Cir. 1997), "[t]here [was] no dispute that the Board reasonably concluded" that the petitioner's beating qualified as past persecution and we *affirmed* the BIA's decision. Here, we are asked to find that the record compels *reversal* of the IJ and BIA's ruling. *See Zhu v. Gonzales*, 465 F.3d 316, 320 (7th Cir. 2006) (noting the significance of the different procedural posture between being asked to affirm versus reverse finding of BIA).

We are not unsympathetic to Nzeve's claim and understand that he suffered blisters and bruises. However, our question is not whether the record in this case could support a finding of past persecution, but whether it

compels such a finding. *Bejko*, 468 F.3d at 485. It does not. *See Mema v. Gonzales*, 474 F.3d 412, 416-18 (7th Cir. 2007) (abduction at gunpoint followed by detention and physical abuse, resulting in petitioner losing consciousness, did not compel conclusion that petitioner suffered past persecution); *see also Zhu*, 465 F.3d at 318-20 (beating, including being hit on the head with a brick resulting in cut requiring seven stitches, did not compel finding of persecution); *see also Dandan*, 339 F.3d at 573-74 (record did not compel conclusion that petitioner suffered persecution based on a single incident where he was detained and deprived of food for three days and was "beaten to the extent that his face became 'swollen'" because petitioner needed to provide more detail).

Because the record does not compel us to conclude that Nzeve suffered past persecution, he is not entitled to a presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1); *see also Yun Jian Zhang v. Gonzales*, 495 F.3d 773, 778 (7th Cir. 2007). Instead, he must demonstrate a subjectively genuine and objectively reasonable fear of future persecution on account of a protected ground. *Ahmed v. Gonzales*, 467 F.3d 669, 674 (7th Cir. 2006); 8 C.F.R. § 208.13(b)(2)(I).

An asylum applicant satisfies the subjective component by credibly testifying that he genuinely fears persecution. *Bolante*, 539 F.3d at 794. The IJ found Nzeve's testimony to be credible and it is not contested that he subjectively fears returning to Zimbabwe. He stated, "Your honor, if I was to be sent back to Zimbabwe I know I would be tortured or killed."

Nzeve's challenge on appeal is to prove that the record compels a finding that he has an objectively reasonable basis for his fear. This requires him to demonstrate that there is a "reasonable possibility of suffering such persecution" upon return, 8 C.F.R. § 208.13(b)(2)(i)(B), or "that a reasonable person in his shoes would fear persecution." *Ahmed*, 467 F.3d at 674. An applicant must "present *specific, detailed* facts showing a good reason to fear that he or she will be singled out for persecution." *Sayaxing v. I.N.S.*, 179 F.3d 515, 520 (7th Cir. 1999) (quotation marks and citations omitted).[1]

The record in this case does not compel us to conclude that Nzeve's fear of future persecution is objectively reasonable. Nzeve received one secondhand threat in

---

[1] An asylum applicant may also demonstrate a well-founded fear of persecution by establishing that there is a "pattern or practice" of persecuting "a group of persons similarly situated to the applicant on account of [a protected ground]." 8 C.F.R. § 208.13(b)(2)(iii). Nzeve does not mention this provision in his brief, although at oral argument he claimed that "all of those that supported the MDC up until recent events and arguably even though the recent events in Zimbabwe feel that they are at any moment subject to persecution by ZANU–PF and the Mugabe government." Demonstrating a well-founded fear of persecution through a pattern or practice of persecution is a high hurdle "because once the court finds that a group was subject to a pattern or practice of persecution, every member of the group is eligible for asylum." *Ahmed*, 467 F.3d at 675. If Nzeve was trying to make a pattern-or-practice claim, the record does not support it.

1999 that was never attempted to be carried out. He then enjoyed several years of peace as he continued to support the MDC. The incident in 2003 was deplorable, but isolated and occurred during a period of turmoil before a parliamentary election. And after this experience, Nzeve was again left alone for six months until he left Zimbabwe. Nzeve's family has not been harassed or interrogated, and there is no evidence that anyone from the government has inquired into Nzeve's whereabouts.

Nzeve points to a series of articles about the treatment of failed asylum applicants who are returned to Zimbabwe by the United Kingdom that he believes provides an objectively reasonable basis for his fear. We disagree with Nzeve's contention that the IJ ignored or improperly dismissed these reports. The IJ acknowledged the reports at the hearing and in his decision.

Neither do we find that the reports compel the conclusion that Nzeve established an objectively reasonable fear of persecution. At oral argument, Nzeve clarified that the danger to failed asylum seekers returning from the United Kingdom came from the manner of their return—the United Kingdom was alerting the Mugabe government to the presence of the returning asylum seekers by using diplomatic channels to arrange for their return. One of the reports explains that United Kingdom Asylum and Immigration Tribunal found that the "process by which the United Kingdom Government enforces the involuntary return of rejected asylum seekers to Zimbabwe exposes them to a risk of ill-treatment at the hands of the [Zimbabwe government]." Another

article reports that some failed asylum seekers "who were forcibly removed from Britain in 2005, have not been heard of since." A third article also discusses the unknown fate of failed asylum seekers who were "forcibly sent back" and notes that "The Home Office was condemned for allowing hired security guards to hand over deportees to Mr. Mugabe's security forces as they arrived at Harare airport." In this case, the BIA granted Nzeve and Mapepa voluntary departure, so it is not clear how these reports are relevant.

There are reports that returning asylum seekers are interrogated at the airport and that the Mugabe government "has become increasingly hostile to and suspicious of Zimbabweans who return to the country after long stays abroad." These reports may refer to both voluntary and involuntary returnees, but it is important to remember that Nzeve must establish a well-founded fear of *persecution*, not simply of being harassed or interrogated upon return. The IJ stated that "even if he is questioned [at the airport] respondent has [not] established his burden of proof." The IJ understood that not all interrogation constitutes persecution. The articles do not compel us to overturn the IJ's decision in this case.

Finally, Nzeve claims that the IJ improperly relied on *Mabasa v. Gonzales*, 455 F.3d 740 (7th Cir. 2006), a case involving withholding of removal, when evaluating Nzeve's asylum claim. In *Mabasa*, we denied a Zimbabwean's petition for review of an asylum application because it was not timely filed and denied his withholding of removal and Convention Against Torture

claims on the merits. *Id.* at 745-47. The IJ in this case analogized to *Mabasa* in the context of explaining that Nzeve, like Mabasa, was a member, but not a leader, of the MDC, and therefore did not face the same threat to which leaders of the MDC are exposed. The IJ stated that the facts in the Nzeve's case "appear to be less extreme" than the facts in *Mabasa*. While we rejected Mabasa's asylum claim for untimeliness rather than on the merits, we tacitly approved the IJ's "thorough analysis" and rejection of Mabasa's asylum claim on the merits. Furthermore, the record in this case clearly establishes that the IJ understood the standard of proof required to establish asylum eligibility and distinguished that standard from the higher standard required for withholding of removal. The IJ properly analyzed Nzeve's claim under the well-founded fear standard.

### C.  Withholding of Removal

Because Nzeve failed to satisfy the lower burden of proof required for asylum, he cannot prove that it is "more likely than not" that his "life or freedom would be threatened" on account of a protected ground if he was returned to Zimbabwe, as required to receive withholding of removal. *I.N.S. v. Stevic*, 467 U.S. 407, 424 (1984); 8 U.S.C. § 1231(b)(3)(A); *see Soumare v. Mukasey*, 525 F.3d 547, 553 (7th Cir. 2008) ("Because [the petitioner] failed to prove his asylum claim, his withholding-of-removal claim fails *a fortiori*.").

### III. CONCLUSION

For the reasons discussed above, we must DENY Nzeve and Mapepa's petition for review.