NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted October 5, 2010[*]
Decided December 20, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-2008

| | |
|---|---|
| VICTOR RODRIGUEZ HERNANDEZ, *Petitioner.* | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A096-134-957 |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent.* | |

**O R D E R**

Victor Rodriguez Hernandez, a native and citizen of Guatemala, petitions for review of the denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture based on persecution he claims to have suffered because of his Aguatecan ethnicity and his political activities. We deny the petition.

---

[*] The parties have waived oral argument in this case, and thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Rodriguez, who was born in the town of Aguacatán, is Aguacatecan, an indigenous ethnicity of Mayan origins. He testified that he joined the Guatemalan military in 1996, at the age of 19, to obtain a better education. In his application for asylum, Rodriguez asserted that his superiors persecuted him because of his ethnicity. He claims that the approximately 20 indigenous soldiers in his unit were subjected to additional training beyond that which the rest of the soldiers received. According to Rodriguez, his superiors subjected indigenous recruits to beatings and further humiliated them by ordering them to roll on grounds strewn with ants or feces. In his application Rodriguez says that, for instance, he was forced to crawl inside "a hole full of manure which included blood, worms, oil, and . . . decomposing animals."

Three years later in 1999, Rodriguez resigned from the military to avoid further mistreatment and returned to Aguacatán, where he organized opposition to Mayor Pablo Escobar Mendez. Rodriguez believed that Escobar was corrupt and misused government funds. He also believed that the mayor was supported by the military and that together they worked to cover up various human rights violations. Around 2000, Rodriguez formed a group called the Peaceful Social Movement to oppose the mayor. He testified that PSM sought Escobar's resignation through peaceful demonstrations attracting up to 10,000 people.

Rodriguez testified that he fled Guatemala in 2001 after a soldier warned him that the military would kill him if he did not leave. He also testified that he continued to provide leadership to PSM by phone even after he left Guatemala. In 2004, he said, PSM was able to corroborate the mayor's misuse of government funds through an audit, and a member of PSM was eventually elected mayor of Aguacatán. Rodriguez maintains that his life remains endangered in Guatemala, as reflected by the murders of PSM members since his escape, and anonymous notes left at his father's house in Aguacatán threatening him with death. Even though Escobar no longer is mayor, Rodriguez says that he remains politically powerful and continues to have the military's support.

In 2002, Rodriguez applied for asylum, withholding of removal and relief under the Convention Against Torture. In his application, Rodriguez claimed only past persecution based on the beatings and the mistreatment he received as an ethnic minority in the military; he sought no relief based on political opinion.

Rodriguez's application was referred for a hearing to the immigration court, where the Immigration Judge ("IJ") rejected his claim for asylum. The IJ found that Rodriguez failed to establish past persecution or a well-founded fear of future persecution based on his treatment while in the military. The IJ determined that this treatment was consistent with rigorous military training around the world and that there was insufficient evidence to support a finding that Rodriguez was being persecuted based on his ethnicity. With regard to Rodriguez's

involvement in PSM, the IJ found that he was not credible because he did not include this claim in his initial asylum application and raised it only at his hearing. The IJ also discounted Rodriguez's testimony as uncorroborated and inconsistent with the documents he submitted. Finding that he failed to meet the burden of proof for his asylum claim, the IJ determined that he could not meet the higher burden required for withholding of removal or relief under the Convention Against Torture. The Board of Immigration Appeals supplemented and affirmed the IJ's decision.

On appeal, Rodriguez argues that the IJ and the BIA erred in finding that the abuse he experienced while in the military did not constitute persecution. Rodriguez maintains that ethnic minorities in his unit were subjected to substantially more training than other soldiers. He testified that, unlike non-indigenous soldiers, he was beaten and forced to endure humiliating treatment, such as crawling through ants, feces, oil, and decomposing animal carcasses. Rodriguez contends that his testimony about the treatment he received while in the military – testimony that the IJ credited – is sufficient to prove past persecution based on his ethnicity.

There is insufficient evidence in the record, however, to overturn the IJ's determination that Rodriguez did not suffer past persecution. Rodriguez is correct that persecution can exist even in cases where there is no serious injury. *See Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010). But the question in this appeal is whether the record *compels* a finding of past persecution, not whether the record *could* support such a finding. *Nzeve v. Holder*, 582 F.3d 678, 684 (7th Cir. 2009). The IJ could credit Rodriguez's testimony and still determine that his treatment in the military did not rise to the level of persecution. *See, e.g., Prela v. Ashcroft*, 394 F.3d 515, 518 (7th Cir. 2005) (explaining that multiple detentions and beatings did not compel a finding of past persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003) (noting that the record did not compel conclusion that a three-day detention and beating was persecution).

Rodriguez next contends that the IJ improperly found his testimony about his involvement in PSM not credible based on inconsistencies between his testimony and the documentary evidence he submitted. Rodriguez's petition vaguely challenges only one of these identified inconsistencies – the inconsistency over the timing of Mayor Escobar's tenure. Rodriguez testified that Escobar had been mayor since 2000, while an Associated Press article he submitted traced Escobar's mayoral regime to 1992. Rodriguez blames this inconsistency on the article's inaccuracy.

The IJ's adverse credibility determination is adequately supported by the record. Credibility determinations are questions of fact that we will overturn only in extraordinary

circumstances, *see Rama v. Holder*, 607 F.3d 461, 465 (7th Cir. 2010), and Rodriguez has not met his burden of explaining the discrepancies between his testimony and his application, *see Aung v. Gonzales*, 495 F.3d 742, 747 (7th Cir. 2007). Even if we accept his vague argument on appeal that his testimony about Mayor Escobar's tenure is not necessarily inconsistent with the documents he submitted, the IJ identified many other inconsistencies in Rodriguez's story. For example, the IJ also based the adverse credibility determination on Rodriguez's omission in his asylum application of any mention of his role in PSM, inconsistent information about the outbreak of protests against the mayor, and the absence of any mention of Rodriguez in the articles he submitted about PSM. Rodriguez has not accounted for these inconsistencies, and unexplained inconsistencies are a sufficient basis for an IJ to find an applicant not credible. *See Toure v. Holder*, 624 F.3d 422, 429 (7th Cir. 2010); *Hassan v. Holder*, 571 F.3d 631, 637 (7th Cir. 2009).

Rodriguez's final argument is that the IJ violated his right to due process by giving insufficient weight to affidavits he submitted from family members and PSM colleagues in Guatemala. Rodriguez submitted several letters from his father and other PSM members to corroborate his claim that he founded PSM and that he was targeted for threats based on his political activities. These letters also stated that Rodriguez continued to give direction to PSM even after he left Guatemala, and that members of the military had killed PSM members and were searching for him.

Rodriguez's due process claim fails because he has not shown that the IJ disregarded these affidavits. Although the complete exclusion of probative evidence can constitute a due process violation, *see Tadesse v. Gonzales*, 492 F.3d 905, 908-09 (7th Cir. 2007), the IJ in this case did not exclude the affidavits. The IJ stated that she considered the affidavits but did not find them persuasive enough to overcome the inconsistencies she identified in Rodriguez's claim. The IJ's decision to place less weight on certain evidence does not alone violate due process. *See Chavez-Vasquez v. Mukasey*, 548 F.3d 1115, 1119 (7th Cir. 2008). The IJ was entitled to weigh all the evidence in the case and was not required to give controlling weight to affidavits she found inconsistent with other information in the application. *See Feto v. Gonzales*, 433 F.3d 907, 911 (7th Cir. 2006); *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004).

Accordingly, we DENY the petition for review.