NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 26, 2010
Decided December 29, 2010

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-3979

| | |
|---|---|
| YANG Q. LIN, also known as BRENDA LI, also known as YAN QING LIN, also known as YANQING LIN, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *Petitioner*, | No. A078-858-607 |
| *v.* | |
| ERIC H. HOLDER, JR., Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

Yang Qin Lin, a 32-year-old native of Lianjiang County in the Fujian Province of China, entered the United States illegally on February 5, 2002. The former Immigration and Naturalization Service instituted removal proceedings against Lin on March 11, 2002. Lin conceded removability but sought asylum based on her practice of Falun Gong in China. She also testified at her removal hearing in Chicago that she feared future persecution if she were forced to return to China because she was unmarried and was soon to give birth to a child. On May 29, 2003, the Immigration Judge ("IJ") denied Lin's application for asylum,

withholding of removal, and protection under the Convention Against Torture ("CAT"). The IJ determined that Lin was not subject to past persecution in China and did not have a well-founded fear of future persecution based on China's family-planning policy. Lin appealed to the Board of Immigration Appeals ("BIA"), which dismissed the appeal without opinion on September 8, 2004.

Despite the order of removal, Lin remained in the United States. She met her husband, also a native and citizen of China, here in the United States, and the couple married on September 12, 2008. They have two daughters. The first was born shortly after the order of removal was issued in 2003, and the second was born in 2009.

Lin filed a motion to reopen her removal proceedings on March 27, 2009. Although the motion was untimely, Lin asserted that the proceedings should nevertheless be reopened based on changed country conditions related to China's alleged increased enforcement of its one-child policy. *See* 8 U.S.C. § 1229a(c)(7)(i) and (ii) (motion to reopen must be filed within 90 days of the final administrative order, unless the motion is based on "changed country conditions" in the country to which removal has been ordered). In particular Lin fears that because she has already given birth to two children in the United States in violation of the policy, if she is removed to China, she will be forced to undergo sterilization or be subjected to fines that rise to the level of persecution.

In addition to her own affidavit, Lin submitted several documents in support of her motion: letters from Lin's mother, two cousins, brother-in-law, and friend describing forced sterilizations and fines for violations of the policy. Two identical letters from Lin's hometown village committee stated that Chinese citizens with one child are targeted for IUD insertion and those with two children are targeted for forced sterilization. The village-committee letters also said that if overseas children are registered, they are deemed Chinese citizens for purposes of family-planning policy. A document from the Guanban Town Central Communist Party described plans to promote the one-child policy, educate families about birth-control techniques including sterilization, and administer fines for violations.

The BIA denied Lin's motion to reopen on November 17, 2009. In its opinion the BIA considered Lin's arguments that she had demonstrated changed country conditions based on increased enforcement of China's family-planning policy and her claim that she had established prima facie eligibility for withholding of removal and protection under the CAT. The BIA then catalogued in detail the documentation supporting Lin's motion. The BIA found that Lin had failed to present sufficient evidence that she would have to register her children or that the lack of registration would rise to the level of persecution. The BIA also took administrative notice of the State Department's 2008 China Country Report and May 2007 Country Profile. These reports indicated that China has continued to enforce its decades-long family-planning policy, that enforcement of the policy "varied significantly,"

and that national policy prohibited forced abortions and sterilizations, although there was some evidence that local officials violated the policy.

The BIA gave little weight to the village-committee letters and the letter from the Guanban Town committee because the documents were unauthenticated. *See* 8 C.F.R. § 1287.6. The BIA remarked that the State Department had reported "widespread fabrication and fraud in documents from Fujian Province." Further, the BIA noted that the village-committee notices did not indicate that forced sterilizations would occur in violation of central governmental policy. The BIA also accorded little weight to the letters from Lin's mother and brother-in-law because they were not notarized, and also because they "pertain[ed] to the alleged experiences of others" and were "apparently prepared for the purpose of litigation." In addition, the BIA found that Lin had failed to show that as the mother of two United States citizen children, she was similarly situated to mothers who had given birth in China and been sterilized and/or subjected to monetary fines. The BIA also held that Lin had failed to carry her burden of proving that a fine would be "particularly onerous." Relatedly, the BIA found that Lin had not made a prima facie showing that paying a social compensation fee, even with an outside loan, rose to the level of persecution.

Based on these findings, the BIA concluded that Lin had not shown the requisite change in country conditions to excuse the untimely filing of her motion to reopen. Lin's marriage and the birth of her United States citizen children, the agency noted, were changes in personal circumstances, not evidence of changed country conditions. Accordingly, the BIA held that her motion was untimely. The BIA further determined that Lin had failed to make a prima facie showing of eligibility for protection under the CAT. Lin petitioned this court for review of the BIA's decision.

We review the BIA's denial of Lin's motion to reopen under a deferential abuse-of-discretion standard. *Kucana v. Holder*, 130 S. Ct. 827, 834 (2010). Motions to reopen removal proceedings are generally disfavored, *INS v. Doherty*, 502 U.S. 314, 323 (1992), in light of the "strong public interest" in the finality of removal orders, *INS v. Abudu*, 485 U.S. 94, 107-08 (1988). We affirm the BIA's decision if it was supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Khan v. Filip*, 554 F.3d 681, 690 (7th Cir. 2009). The petitioner bears the burden of proving that she has a well-founded fear of future persecution. *Nzeve v. Holder*, 582 F.3d 678, 683 (7th Cir. 2009).

A recent decision of this court forecloses Lin's entire argument. The underlying facts of this case, the documents supporting Lin's motion to reopen, and Lin's arguments on appeal are all remarkably similar to those of the petitioner in *Liang v. Holder*,

No. 09-3713, 2010 WL 4751727 (7th Cir. Nov. 24, 2010). In both cases the petitioners entered the country illegally, were denied asylum and ordered removed, remained in the country

illegally, married, gave birth to two children, and then sought to stay in this country on the basis of changed circumstances with regard to local enforcement of China's family-planning policy. *See id.* at *2. Even the evidence presented in the two cases was nearly identical: Both petitioners relied largely on letters from family members and unauthenticated local committee reports purportedly from within Fujian Province.

In *Liang* we denied a petition for review of the BIA's denial of a motion to reopen based on changed country conditions relating to China's family-planning policy. *Id.* at *5. We held there that the BIA did not abuse its discretion in denying Liang's motion to reopen proceedings. *Id.* at *10. We said the agency was entitled to place little weight on the unauthenticated documents presented as proof of changed conditions, especially in light of well-documented fraud problems in Fujian Province. *Id.* at *7. Further, we held that the BIA's determination that the implementation of the family-planning policy had not materially changed during Liang's time in the United States was well-reasoned and supported by substantial evidence. *Id.* at *9-*10. Finally, to the extent that there was any showing that Liang was likely to face persecution upon her return to China, she could not show that this persecution was due to changed circumstances within the country, rather than changed personal circumstances. *Id.* And changed personal circumstances are not a basis for asylum. *See Chen v. Gonzales*, 498 F.3d 758, 760 (7th Cir. 2007) ("It makes no sense to allow an alien who manages to elude capture . . . after he has been ordered to leave the country, and has exhausted all his legal remedies against removal, to use this interval of unauthorized presence in the United States to manufacture a case for asylum.").

Here, as in *Liang*, the BIA did not abuse its discretion. It gave a detailed and rational account of why it discounted the unauthenticated Chinese documents and letters from Lin's family. Further, the BIA supported its determination that China's family-planning policy has not materially changed since Lin arrived in the United States with ample evidence. Finally, we agree with the BIA that to the extent Lin faces persecution upon her return to China, she has not met her burden of showing that that persecution arises from changed circumstances within the country, rather than changes in her personal circumstances. The BIA was entitled to view Lin's motion as essentially an attempt to "manufacture a case for asylum." *Id.*

For the foregoing reasons, Lin's petition for review is DENIED.