NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 4, 2011[*]
Decided October 20, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-1398

| | |
|---|---|
| KING SUM CHEN,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A076-766-398 |
| ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>    *Respondent.* | |

**O R D E R**

King Sum Chen, a native of China and lawful permanent resident of Hong Kong, petitioned for review of an order of the Board of Immigration Appeals upholding the denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture. He contends that he faces persecution if forcibly returned to Hong Kong. An immigration judge denied Chen's application, noting that Chen (1) could return to other parts of China where he had never faced persecution, and (2) could not trace the alleged persecution to any cognizable ground for asylum. The Board agreed and added that Chen

---

[*]We granted petitioner's unopposed motion to waive oral argument. Thus, the petition for review is submitted on the briefs and record. *See* FED. R. APP. P. 34(f).

had not shown that the harm he suffered in Hong Kong rose to the level of persecution. Because the record supports these rulings, we deny the petition for review.

Chen was born in China (Fujian province) and married there in 1987. In the early nineties he and his wife moved to Hong Kong as lawful residents. Chen entered the United States in 2003 on a nonimmigrant tourist visa and overstayed, and the Department of Homeland Security charged him with removability in 2007. He appeared before an immigration judge the following year and sought asylum based on his social group membership (which at the time he did not define) and relief under the Convention Against Torture.

Chen testified that he was threatened and extorted by a group of young people whom he calls members of the "black society or mafia." Beginning in 1998 these young "mafia members" would stop him and demand money. They later robbed him and warned him that they would return for a monthly "protection" fee. The men continued to visit Chen every three to four weeks, and when he didn't pay they slapped him and threatened to kill him. They wrote threats on the door of his home; they also visited Chen at his workplace, which led to him being fired. Chen reported these events to the police in 1999, but the investigation never progressed, and the shake-downs continued.

Chen then moved with his wife and son to another part of Hong Kong but, he testified, the group followed them and wrote threats on the outside of their new home. After Chen left Hong Kong in 2003, his wife was beaten—sustaining bruises all over her body and even being hospitalized for a few days—by a group of young people who asked her about his location and why he hadn't paid the protection fee. When asked by the IJ whether he could return to mainland China, Chen said that he feared the mafia would follow him, adding that he could not return to China or Hong Kong because he lacked the proper documentation.

Chen introduced several documents to corroborate his story about the fear and harm the mafia caused him. He submitted articles from the Tapei Times and the New Republic detailing gang influence in Hong Kong. He also introduced a letter from his wife that confirmed his account and detailed her attack. Chen's former landlord wrote a letter explaining that he had asked Chen and his family to move because he feared the mafia would also target him.

The IJ denied Chen's application. The IJ found that Chen could relocate to other parts of China; he also rejected Chen's contention, based on his birth records and marriage certificate in the record, that he lacked the necessary papers to return. Alternatively, the IJ found that Chen did not qualify for asylum because he had not shown that he was

persecuted based a protected ground. Finally, the IJ determined that Chen failed to show that the government played a role in his persecution or could not control it, another element required for asylum protection.

In his appeal to the Board, Chen revised his social-group claim to argue that he was persecuted for being a "government cooperator"—seemingly conflating the notion that he held a protected political opinion into the status of being an opponent of the mafia. Chen said that the mafia knew he went to the police and may have assumed that he was working with law enforcement. The mafia would want to punish him, he asserted, for his reporting their wrongdoing. Nor could the mafia be controlled by the government, he added, because they continued to harass him despite the complaints he made to the police.

The Board agreed with the IJ that Chen had not shown that any political opinion or membership in a social group motivated, even in part, the mafia to target him. The Board added, without further comment, that the harm suffered by Chen, "while regrettable, did not rise to the level of past persecution." Nor had Chen demonstrated a well-founded fear of future persecution, because he could reasonably relocate to mainland China.

Chen asserts in his petition, without pointing to any particular errors in the Board or the IJ's reasoning, that he showed that the mafia persecuted him based on a protected ground and that the Hong Kong government could not adequately protect him. Chen identifies his protected ground alternatively as his "anti-mafia" social group or political opinion, although his application specified only membership in a social group. Chen states in his petition, as he did for the first time before the Board, that he "publicly struggled" against the mafia organization and "expressly resisted" the mafia's activities. By reporting these incidents to the police, he says, he identified himself as a member of an "anti-mafia" group.

Chen's arguments fail because he never proved that the mafia connected him to a political opinion or social group. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A). The IJ correctly found that Chen presented only his own belief that he experienced targeted persecution, which is insufficient to show persecution based on social group or political opinion. *See Khan v. Filip*, 554 F.3d 681, 691 (7th Cir. 2009). Chen did not testify that the mafia was aware that he was part of a social group or held any political affiliation. This supports the IJ's observation that Chen likely was a target of general crime, and asylum law does not protect general crime victims. *See Ahmed v. Ashcroft*, 348 F.3d 611, 619 (7th Cir. 2003); *Kharkhan v. Ashcroft*, 336 F.3d 601, 605 (7th Cir. 2003); *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003). Even if Chen had shown that the harassment was retaliation for going to the police, "people who are persecuted solely because they have cooperated with police . . . are not considered to be part of a defined social group." *See Sarhan v. Holder*, No.

10-2899, 2011 WL 3966151, at *5 (7th Cir. Sept. 2, 2011); *Wang v. Gonzales*, 445 F.3d 993, 999 (7th Cir. 2006).

Next, Chen seems to argue that the Board erred by not considering the record as a whole when it determined that his harm did not rise to the level of persecution. He suggests that the cumulative effect of the hardships he faced over several years constitutes persecution. He points to both the physical harm he suffered when he was stopped and slapped and the fear he experienced when the mafia threatened him with violence. Chen also mentions the economic struggles he endured when he lost his job and had to move.

Chen has not shown that the Board failed to consider the cumulative nature of the harm he suffered in Hong Kong. To the contrary, the Board acknowledged that Chen was slapped, his wife was beaten, and that he was fired from his job. Based on these events, the Board was not compelled to find persecution. Chen did not describe or introduce any evidence of injuries that either he or his wife suffered, and vaguely defined physical injuries from isolated incidents are insufficient to show persecution. *See Irasoc v. Mukasey*, 522 F.3d 727, 730 (7th Cir. 2008); *Zhu v. Gonzales*, 465 F.3d 316, 319–20 (7th Cir. 2006); *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003). Beyond the physical harm, unfulfilled threats generally do not themselves constitute persecution, and Chen offers no reason why his case lies outside this general rule. *See Ni v. Holder*, 635 F.3d 1014, 1019 (7th Cir. 2011); *Nzeve v. Holder*, 582 F.3d 678, 683 (7th Cir. 2009); *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006). And Chen did not show that he suffered a "deprivation of liberty, food, housing, employment or other essentials of life" necessary to demonstrate economic persecution. *See Chen v. Holder*, 604 F.3d 324, 334 (7th Cir. 2010); *Koval v. Gonzales*, 418 F.3d 798, 805–06 (7th Cir. 2005). He was able to relocate to a new home, and nothing in the record suggests that he was prevented from finding other employment.

Finally, Chen contends that he has a well-founded fear of future persecution because he has demonstrated that the mafia's harassment would continue if he returned to China. He takes issue with two parts of the IJ's decision: he disagrees with the IJ's finding that he could return to another part of China, arguing that the mafia would continue to follow him, and he believes that he effectively showed that the Hong Kong government could not control the mafia and that it remains unsafe for him to return. But these contentions do not take Chen very far, because a well-founded fear of future persecution requires him to show persecution based on a protected ground, and this he has not done. *See* 8 C.F.R. § 208.13(b)(2)(i)–(ii); *Wang*, 445 F.3d at 998; *Tamas-Mercea v. Reno*, 222 F.3d 417, 426–27 (7th Cir. 2000).

Accordingly, Chen's petition for review is DENIED.