NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 20, 2013
Decided December 23, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-1863

| | |
|---|---|
| WEIWEI CHEN,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | A088 487 537 |
| ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>    *Respondent*. | |

**O R D E R**

Weiwei Chen, a 23-year-old native of China living in the United States without permission, left her home country after police detained her, beat her, and attempted to assault her sexually because of her church activities. She fears that, if returned there, Chinese authorities will persecute her based on her practice of Christianity. Finding her account credible, an immigration judge nonetheless denied her relief from removal. The IJ and the Board of Immigration Appeals concluded that the attempted sexual attack and related events were not past persecution and that her fear of future persecution was

not well-founded. When combined with the other aspects of her detention, the attempted sexual assault can constitute past persecution. Therefore we grant Chen's petition for review of the agency's decision.

The IJ found Chen "fully credible," so we recount Chen's statements. Chen was born and raised in Shenyang, a city in the province of Liaoning. When she was in junior high school, a former schoolmate introduced her to Christianity. She soon began attending family-church activities and was baptized. She continued to attend weekly church services until December 2006 when police discovered her, along with a number of other people, at a Bible study class held in someone's house. She was 16 years old at the time. They accused her and the others in attendance of colluding with foreigners, and they detained the worshipers at a nearby police station.

Chen was interrogated, beaten, and traumatized over the next five days at the station. When she arrived at the station she was tied down, and two officers interrogated her for half an hour. During her first session of questioning, they threatened to send her to a labor camp and accused her church of associating with foreign "reactionary religious influence[s]" and plotting to overthrow the Chinese government. When she refused to reveal information about her church or confess to a crime, the interrogators pinched her, slapped her face, kicked her with their heavy boots, and punched her until she fell to the floor. She received "a lot of contusions" and was "black and blue."

The police beat and interrogated Chen three more times before releasing her from custody. During one of these sessions, an officer attempted to sexually assault her. Chen explains that the officer "came close to me, and he tried to touch my body in many different places. And, he even went so far as to try to, you know take my clothes off. But, I was, I was fighting. I said that if you do that, then, I will scream for help." The officer backed off and sent her to her cell.

After Chen's five-day detention, the police discharged her. To secure her release her parents paid a 2,000-yuan bond, and she signed a statement prepared by the police promising not to participate in illegal religious gatherings or contact other churchgoers. As required by the police, she reported to them weekly. She returned to school, but the past abuse, her suspended worship, and weekly visits to the police left her depressed and unable to focus on her studies.

Chen's parents arranged a United States student visa for her, and she arrived in this country in February 2007, less than two months after her release from police custody. Because she was depressed and afraid of further government mistreatment, she explained, she left China immediately rather than wait until she could afford tuition to attend school in the United States. Chen has resumed her church activities, attending services at a number of churches in Chicago's Chinatown neighborhood.

Meanwhile, the police are searching for Chen in China. When she first failed to report to the police, they visited her parents and questioned them about her whereabouts. Her parents explained that she left home, and the police ordered them to report when she returns or face prosecution for harboring a fugitive. The police regularly check her parents' home to see if she has returned.

Chen filed for asylum, withholding of removal, and relief under the Convention Against Torture based on religious and political persecution. (Although Chen submitted her affirmative application for asylum after the one-year filing deadline, the IJ waived the deadline, finding it reasonable under the circumstances that she filed three months after her eighteenth birthday.) In her application, Chen explains her fear that if she returns to China the police will arrest her, detain her again, and severely punish her. She also fears that the police will place her under surveillance, preventing her from practicing her religion.

After the government initiated removal proceedings for overstaying her visa, the parties submitted additional materials bearing on Chen's application. She furnished a letter from her pastor in China, verifying that she was baptized and had participated in church activities. The government submitted the State Department's International Religious Freedom Report from 2010, which details how China recognizes—but limits—religious freedom. House churches, such as the one Chen attended, may not hold open services unless they affiliate with a patriotic-religious association sanctioned by the government. Authorities in some parts of China have imprisoned worshipers for unauthorized assemblies and expressions of religious beliefs.

The IJ denied Chen asylum, withholding of removal, and CAT relief. Despite crediting her testimony that the beatings left her with "a lot of contusions" and that she was sexually threatened, the IJ found that this treatment did not seriously bruise or harm her. Therefore, the IJ concluded, she suffered no past persecution. He also found that Chen failed to establish a well-founded fear of future persecution, pointing out that

the letter from her pastor in China did not say whether the pastor fears for his own safety, even though Chinese authorities tend to target the religious leaders.

The Board dismissed Chen's appeal of the IJ's denial of her request for asylum and withholding of removal. It ruled that her detention was too short and her mistreatment too minor to qualify as persecution, and that her fear of future persecution was not objectively reasonable. In disapproving of but nonetheless discounting the attempted sexual assault, the Board reasoned: "We are particularly troubled by [Chen's] testimony that one official attempted to touch her in a sexual manner, but she also testified that the inappropriate behavior ceased when she threatened to scream. Under these circumstances, we agree with the Immigration Judge that the incidents described by [Chen] amount to harassment rather than persecution." The Board also ruled that, although age is relevant in assessing persecution and the IJ did not discuss Chen's age in his analysis, the IJ was aware of her young age when he considered whether she had been persecuted.

On appeal Chen objects to the dismissal of her petition, asserting that since persecution may be psychological and need not involve repeated or severe physical abuse, the agency erred in concluding that she had not been persecuted and that her fear of future persecution was unreasonable. Though she maintains that she would qualify for relief even if she had been an adult when abused, she also argues that the agency erred by giving too little consideration to the attempted sexual assault and her young age.

Since the Board adopted and supplemented the IJ's decision, we review both opinions. *See Sirbu v. Holder*, 718 F.3d 655, 658 (7th Cir. 2013); *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011). To withstand review, the agency's decision must be supported by substantial evidence. *See Sirbu*, 718 F.3d at 659; *Reyes-Sanchez v. Holder*, 646 F.3d 493, 496 (7th Cir. 2011). But we review de novo the agency's legal rulings. *See Yi Xian Chen v. Holder*, 705 F.3d 624, 628 (7th Cir. 2013); *Sarhan v. Holder*, 658 F.3d 649, 653 (7th Cir. 2011).

We begin with two procedural matters. First, the government argues that, by not raising with the Board her objections to the IJ's denial of relief under the CAT, Chen has not exhausted her administrative remedies. We may address only those grounds for relief from removal that the petitioner exhausted administratively. *See* 8 U.S.C. § 1252(d)(1); *Pavlov v. Holder*, 697 F.3d 616, 619 (7th Cir. 2012). Chen does not dispute that she abandoned her CAT claim before the Board. Accordingly, Chen has forfeited

that claim. *See id.* Second, we consider whether the agency failed to consider adequately Chen's age in deciding her claims for relief. While age can be an important factor in deciding whether a petitioner suffered persecution or reasonably fears future persecution, the agency need not explicitly consider the petitioner's age, as long as it is aware of her age. *See Liu v. Ashcroft*, 380 F.3d 307, 314 (7th Cir. 2004). That happened here. The Board discussed Chen's claims of past and feared-future persecution in light of her age, and the IJ was aware of her age because he excused her lateness in filing for asylum in observing that she had just turned eighteen.

But the agency applied an incorrect legal standard when it concluded that Chen's detention was too short and her mistreatment too minor to be persecution. In considering a persecution claim, the agency must evaluate the "cumulative significance" of the petitioner's mistreatment, rather than each abusive act individually. *See Nzeve v. Holder*, 582 F.3d 678, 683 (7th Cir. 2009); *Tchemkou v. Gonzales*, 495 F.3d 785, 790–91 (7th Cir. 2007). We have also held that persecution includes the application of "*significant* physical force against a person's body, … the infliction of comparable physical harm without direct application of force," or the infliction of "nonphysical harm of equal gravity." *Yasinskyy v. Holder*, 724 F.3d 983, 989 (7th Cir. 2013) (quoting *Stanojkova*, 645 F.3d at 948 (emphasis in original) (explaining that preventing a person from practicing her religion is persecution, though it causes only psychological harm)). Finally, while idle threats usually do not qualify as persecution, persecution can result from a credible threat of a particularly serious or imminent nature, an attempt to carry out the threat, or a threat that reasonably causes a person to refrain from lawful religious activities. *See Stanojkova*, 645 F.3d at 948; *Zhou Ji Ni v. Holder*, 635 F.3d 1014, 1019 (7th Cir. 2011); *Nzeve*, 582 F.3d at 683; *Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006); *Kantoni v. Gonzales*, 461 F.3d 894, 897–98 (7th Cir. 2006).

Under these standards, the agency erred in two respects. First, the Board incorrectly discounted the trauma of a sexual assault by reasoning that, because Chen fought off her assailant before he inflicted more harm, she was merely harassed. We have consistently held that substantial evidence did not support a finding of no persecution where, among other factors, the petitioner was about to be sexually assaulted but the attacker was scared off mid-assault. *See Stanojkova*, 645 F.3d at 945–48 (rejecting finding of no persecution where, among other things, the "assailant tried to rip off her pajama bottoms[, but] she screamed very loudly, whereupon all three attackers left"); *Nakibuka v. Gonzales*, 421 F.3d 473, 475–80 (7th Cir. 2005) ("The IJ also minimized Nakibuka's complaints about the attempted rape, noting that 'another soldier intervened and prevented such an attack.' But we are unwilling to dismiss so

casually a threat of imminent rape. The threatened rape was one way for the soldiers to express their domination and control… ."); *Angoucheva v. I.N.S.*, 106 F.3d 781, 785–90 (7th Cir. 1997). Therefore, the agency incorrectly reasoned that Chen's sexual assault was too minor to be persecution.

Second, the agency improperly focused only on Chen's detention. The agency should also have considered, beyond the five-day detention, the effect that the detention had on her later: her resulting depression and inability to study, the restrictive conditions of her release (which forced her to abandon her church activities and report to the police), her fears that the police would send her to a labor camp, and their persistent attempts to locate her. *See Stanojkova*, 645 F.3d at 948; *Nzeve*, 582 F.3d at 683; *Kantoni*, 461 F.3d at 897–98. Moreover, the agency's focus on the detention itself reflects further error because the IJ mistakenly said that Chen was not severely bruised even though she credibly testified that she was. Since the agency improperly ignored these aspects of her abuse and incorrectly discounted the attempted sexual assault, we grant the petition for review with regard to Chen's claims for asylum and withholding of removal.

Based on our conclusion that Chen may establish that she suffered past persecution, she is entitled to a rebuttable presumption of future persecution. *Stanojkova*, 645 F.3d at 946. For completeness, we note that in addition to this presumption she also presented considerable evidence supporting her fear of future persecution: as just mentioned, the police have an outstanding threat to send her to a labor camp, they regularly search for her, and they have warned her parents—upon threat of criminal prosecution—that they must turn her in immediately when she returns. The State Department's International Religious Freedom Report supports her fears, as well: as of 2010, some authorities in China targeted religious believers for worshiping and expressing their religious beliefs outside of state-sanctioned churches.

We grant the petition to review Chen's request for asylum and withholding of removal so that the agency may consider these claims under the proper standard.